IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN R. CLABAULT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05 C 5482 |
| | ) | |
| SHODEEN MANAGEMENT, et al., | ) | |
| and RAY AGRELLA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Clabault brought this action against Shodeen Management and its attorney, Ray Agrella, in September 2005. Plaintiff's initial complaint included allegations of violations of due process, the Fair Debt Collection Practices Act (15 U.S.C. § 1692) ("FDCPA") and the Fair Housing Act (42 U.S.C. § 3604) ("FHA"), stemming from defendants' alleged discriminatory actions with regard to plaintiff's rent collection and eviction proceedings. We granted plaintiff a limited right to proceed *in forma pauperis* with respect to her FDCPA claim. We denied her right to proceed with respect to allegations of due process violations, finding that the claims were barred by the Rooker-Feldman doctrine. And finally, we denied her right to proceed with respect to her FHA claim, holding that we needed more information to determine whether that claim would be barred by Rooker-Feldman. *See* Clabault v. Shodeen Management, 406 F.Supp.2d 877 (N.D.Ill. 2005) ("Clabault I"). In January 2006, over defendants' objections, we granted plaintiff leave to amend her complaint. *See* Clabault v. Shodeen Management, 2006 WL 87600 (N.D.Ill. 2006) ("Clabault II"). Thereafter, defendants made an oral motion for dismissal of plaintiff's first amended complaint. For the reasons

stated below, we grant, in part, defendants' motion to dismiss.

DISCUSSION

We analyze plaintiff's complaint under FED. R. CIV. P. 12(b)(1) for subject matter jurisdiction and FED. R. CIV. P. 12(b)(6) for claims upon which relief can be granted. Under both rules, we accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. McDonald v. Household Int'l, 425 F.3d 424, 425 (7th Cir.2005) (construing a Rule 12(b)(6) motion); United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996) (construing a Rule 12(b)(1) motion). In reviewing a complaint for subject matter jurisdiction, we may consider additional materials outside of the complaint. United Transp. Union, 78 F.3d at 1210.

Fair Housing Act

Plaintiff's complaint alleges FHA violations for failure to provide reasonable accommodation for her mental disability. In Clabault I, we dismissed plaintiff's FHA claim without prejudice, explaining that such a claim may be barred by the Rooker-Feldman doctrine, depending on what injury plaintiff was asserting.[1] Because Brittany Court Apartments, managed by Shodeen Management, successfully brought suit in state court against plaintiff for nonpayment of rent and possession of the rental premises (Brittany Court Apts. v. Clabault, No. 05 LM 1223 (Aug.18, 2005)), we held that plaintiff's FHA claim would be barred by Rooker-Feldman if she was seeking relief that implored us to overturn the state court's determination. Thus, if plaintiff was asserting an FHA claim based on an injury

---

[1]The Rooker-Feldman doctrine, based on Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), "precludes lower federal courts from exercising jurisdiction over claims that would require them to review a final judgment of a state court." Manley v. City of Chicago, 236 F.3d 392, 396 (7th Cir.2001). For a full description of the Rooker-Feldman doctrine, See Clabault I, 406 F.Supp.2d at 879-880.

arising from her debt to Brittany Court Apartments or the eviction proceedings, it would be barred by Rooker-Feldman. Clabault I, 406 F.Supp.2d at 882. If, however, plaintiff was alleging her injury was a result of the lessor's harassment that in itself was independent from the debt, then such claim would not be barred. *Id.*

Plaintiff's first amended complaint does not do much to clear up the questions we faced in analyzing the original complaint. She points to an FHA provision defining illegal discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). We read plaintiff's allegations to state an FHA claim based on defendants' refusal to afford her an opportunity to (1) pay her rent late and/or (2) renew her lease in the face of her rental debt. Plaintiff alleges that by refusing to allow plaintiff to re-let her apartment because she was overdue in prior rental payments, defendants violated the FHA's reasonable accommodation provision.

While the reasonable accommodation provision does not require a lessor to do everything possible to accommodate a disabled person (Anast v. Commonwealth Apartments, 956 F.Supp. 792, 801 (N.D.Ill. 1997)), courts will undertake a cost-benefit analysis to determine whether acceptance of late rent payment constitutes reasonable accommodation. *See id.*; Stephenson v. Ridgewood Village Apartments, 1994 WL 792581 (W.D.Mich. 1994).

A cost-benefit analysis is unnecessary, however, if plaintiff's FHA claim is barred by Rooker-Feldman. Such is the case here. In Long v. Shorebank Dev. Corp., 182 F.3d 548 (7th Cir. 1999), the Seventh Circuit held that claims actually raised in a state court judgment or claims inextricably intertwined with such issues are barred by Rooker-Feldman. To determine whether federal claims fall within the doctrine's ambit, we inquire whether the injury alleged

by plaintiff arose from the state court judgment or whether it is independent of that judgment. Long, 182 F.3d at 555.

Plaintiff's discrimination claim is based on defendants' refusal to permit her to submit late rental payments, refusal to allow her to re-let her apartment because of the debt, and/or action to collect on the late rental payment and to seek eviction. While it might be true that defendants' actions violated FHA's reasonable accommodation provision, plaintiff's FHA claim is inextricably intertwined with the debt and eviction proceedings decided by the state court. See Fayyumi v. City of Hickory Hills, 18 F.Supp.2d 909, 916-17 (N.D.Ill. 1998) (plaintiffs' FHA § 3604 claim alleging that defendant lulled plaintiffs into believing they could pay their rent late to justify their eviction was barred by Rooker-Feldman because the injury was only complete upon the state court's ruling); Marine Park Associates v. Johnson, 1 Ill.App.3d 464 (Ill.App.Ct. 1971) (lessee's housing discrimination claim was germane to the issue of possession and may be introduced by defendants in an eviction proceeding under the Forcible Entry and Detainer Act). Thus, unlike the plaintiff in Long, who was unable to bring her FDCPA and § 1983 claims because they were not germane to the issue of possession, plaintiff here had a reasonable opportunity to present her FHA claim in the state court (Kane v. Oak Trust and Sav. Bank, 1995 WL 683820, *3 (N.D.Ill. 1995) (racial discrimination and retaliatory eviction could be asserted as a valid defense to unlawful detainer action)), and therefore, is barred from presenting it now.

Our finding that plaintiff's FHA claim is barred by Rooker-Feldman is further bolstered by the relief plaintiff has requested. See Hood v. Keller, 341 F.3d 593, 597 (6th Cir. 2003) ("In determining the applicability of the Rooker-Feldman doctrine, federal courts 'cannot simply compare the *issues* involved in the state-court proceeding to those raised in the

federal-court plaintiff's complaint,' but instead 'must pay close attention to the *relief* sought by the federal-court plaintiff'") (emphasis in original); <u>Bianchi v. Rylaarsdam</u>, 334 F.3d 895, 900 (9th Cir. 2003); <u>Kenman Engineering v. City of Union</u>, 314 F.3d 468, 476 (10th Cir. 2002), *rev'd on other grounds by* <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005); <u>Drewicz v. Dachis</u>, 2001 WL 1223524, *3 (N.D.Ill. 2001) (plaintiff's complaint about the state court eviction judgment alleged an injury caused by the state court judgment). It is clear from plaintiff's complaint and court appearances that the relief she seeks is the ability to re-let her apartment. As the state court action specifically addressed possession of the apartment, we cannot discuss the merits of plaintiff's federal claims without impermissibly reviewing the state court judgment.

Plaintiff's complaint also attempts to state claims under FHA for retaliation for filing a federal lawsuit. Section 3617 of the FHA states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed ... any rights granted or protected by section 3603, 3604, 3605, or 3606 of this title." *See also* <u>Looper Maintenance Service Inc. v. City of Indianapolis</u>, 197 F.3d 908, 912 (7th Cir. 1999).[2] Plaintiff's initial complaint, filed in September 2005, references the state law judgment against her for underpayment of rent and eviction. If defendants initiated action against plaintiff for overdue rent and eviction *prior* to plaintiff's filing of this lawsuit, we cannot see how defendants' continued effort to evict plaintiff is retaliation for plaintiff's

---

[2]In order to successfully plead a claim under section 3617, plaintiff must plead that (1) she is protected under the FHA; (2) she was engaged in the exercise and enjoyment of her housing rights under the FHA; (3) defendants intentionally discriminated against her, or their conduct had a disparate impact; and (4) defendants coerced, threatened, intimidated, or interfered with plaintiff's exercise or enjoyment of her fair housing rights on account of her protected activity. <u>East-Miller v. Lake County Highway Dept.</u>, 421 F.3d 558, 563 (7th Cir. 2005).

filing of this lawsuit.[3]

## Illinois Human Rights Act

Plaintiff also alleges violations of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* The IHRA was designed to "provide[] a 'comprehensive scheme of remedies and administrative procedures' to deal with allegations of human rights violations." Bell v. LaSalle Bank N.A./ABN AMRO N.A., Inc., 2005 WL 43178, *2 (N.D.Ill.2005) (*citing* Mein v. Masonite Corp., 485 N.E.2d 312, 315 (1985)). And while it is true that the IHRA prohibits discrimination against handicapped people in the rental, sale or lease of property (775 ILCS 5/3-102, 102.1), we do not have jurisdiction to hear such claims. The IHRA scheme is the exclusive source of redress for plaintiff's allegations (Bell, 2005 WL 43178 at *2), and grants us jurisdiction only after the Human Rights Commission has made its final determination. Talley v. Washington Inventory Service, 37 F.3d 310, 312 -313 (7th Cir. 1994). On February 23, 2006, plaintiff instituted a complaint with the Human Rights Commission (*see* First Amended Complaint, Ex. 4), which is the proper authority to address plaintiff's claim. We will not overstep our boundaries by analyzing the merits of plaintiff's claim until the Commission has had an opportunity to fully investigate.

## Verbal abuse and harassment of a *pro se* litigant

Plaintiff also alleges that, as a *pro se* litigant, she has been harassed and verbally abused by the defendants throughout the pendency of the state court action. Specifically, plaintiff

---

[3]Nor could plaintiff make out a claim for retaliatory eviction under the Illinois Retaliatory Act, 765 ILCS § 720/1. To make out a successful claim for retaliatory eviction, plaintiff must plead and prove "1) the tenant made complaints to a governmental authority; 2) violations were found; 3) the landlord was notified of the violations; and 4) the tenancy was terminated solely because of the tenant's complaints." Ross v. Midland Management Co., 2003 WL 21801023, *5 (N.D.Ill. 2003) (*citing* Shelby Co. Housing Auth. v. Thornell, 493 N.E.2d 1109 (Ill.App.Ct. 1986)). Even reading plaintiff's complaint very broadly, plaintiff has failed to plead the second and third prongs.

states that Mary Agrella Fitzpatrick yelled at her in the hallway of the Kane County Courthouse. It is unclear, and plaintiff does not explain, how Ms. Fitzpatrick is related to the named defendants.[4] Thus, we cannot find any cause of action against the named defendants.

Additionally, any harassment plaintiff received at the hands of defendants in retaliation for exercising her rights under the FHA would be covered by FHA § 3617. We have already held that plaintiff has failed to state a claim under that provision. Further, based on plaintiff's complaint, we cannot see how the allegations rise to the level of a § 3617 violation. *See* East-Miller, 421 F.3d at 563.

Fair Debt Collection Practices Act

In Clabault II, defendants moved to dismiss plaintiff's claims, including her FDCPA claim, pursuant to Fed. R. Civ. P. 12(b)(6), 12(c), and/or 12(f). We allowed plaintiff to continue with her FDCPA claim, holding that it was not barred by Rooker-Feldman or *res judicata*. Because we granted plaintiff's request for leave to amend her complaint, we did not address whether plaintiff sufficiently pled an FDCPA claim upon which relief can be granted. We do that now.

The FDCPA was developed to "eliminate abusive debt collection practices by debt collectors." Blair v. Sherman Acquisition, 2004 WL 2870080, *2 (N.D.Ill. 2004). The FDCPA is liberally construed, and applies an "unsophisticated consumer" standard (*id.*), which means that in a motion to dismiss we consider "whether, under any set of facts, an unsophisticated consumer could find the statement in the collection letter deceptive or misleading." Sherman

---

[4]In another portion of her complaint, plaintiff states that Ms. Fitzpatrick is a member of Agrella's firm. If this is true, plaintiff cannot hold Mr. Agrella responsible for his employee's conduct without alleging liability under *respondeat superior*, which she has failed to do. *See e.g.*, Raymond S. v. Sperlik, 2005 WL 3299810, *3 (N.D.Ill. 2005) (to state an intentional tort *respondeat superior* claim, tortfeasors' actions must fall within the scope of employment).

v. Financial Credit, LLC, 2003 WL 1732601, *2 (N.D.Ill. 2003). Given that we construe a *pro*

*se* plaintiff's pleadings liberally (Henderson v. Sheahan, 196 F.3d 839, 845-46 (7th Cir. 1999)),

we find that plaintiff has adequately pled an FDCPA violation. Specifically, plaintiff pled that

defendants harassed, oppressed, or abused her in connection with the collection of a debt in

violation of 15 U.S.C. § 1692d. Additionally, in alleging that defendants intentionally

requested an incorrect debt amount in debt collection letters, plaintiff pled that defendants

used false, deceptive, or misleading representation or means in connection with the collection

of a debt in violation of 15 U.S.C. § 1692e.[5]

## CONCLUSION

For the reasons stated above, defendants' oral motion to dismiss plaintiff's first

amended complaint is granted in part. We dismiss plaintiff's FHA and Illinois Human Rights

Act claims with prejudice. We deny defendants' motion to dismiss plaintiff's FDCPA claim.

_James B. Moran_
JAMES B. MORAN
Senior Judge, U. S. District Court

May 15 , 2006.

---

[5]Although plaintiff does not attach the debt collection letter to her first amended complaint, she did attach it to her original complaint and references defendants' actions in "trying to collect fraudulent rent and legal fee amounts, never owed" in her first amended complaint. Therefore, we will consider the letter in deciding whether to dismiss her complaint. *See* Ibscher v. Snyder, 2003 WL 21696197, *1, n3 (N.D.Ill. 2003).